UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
File No.:

**CHARLES FRANKLIN CONNOR**,                    :
     Plaintiff,                                   :
                                                  :
vs.                                             :
                                                  :
**NORFOLK SOUTHERN RAILWAY COMPANY**;           :
                                                  :
**AIR & LIQUID SYSTEMS CORPORATION**,           :
individually and as successor-in- interest to BUFFALO :
PUMPS;                                          :
                                                  :     **CIVIL ACTION COMPLAINT**
**BW/IP, INC.**, individually and as successor to BYRON :
JACKSON PUMPS;                                  :     **JURY TRIAL DEMANDED**
                                                  :
**CARRIER CORPORATION**;                        :
                                                  :
**CBS CORPORATION**, f/k/a Viacom, Inc., sued as :
successor-by-merger to CBS Corporation f/k/a    :
Westinghouse Electric Corporation;              :
                                                  :
**COVIL CORPORATION**;                          :
                                                  :
**CRANE CO.**;                                  :
                                                  :
**DANA COMPANIES LLC**, successor-by- merger to :
WARNER BRAKE AND CLUTCH COMPANY;                :
                                                  :
**DANIEL INTERNATIONAL CORPORATION** f/k/a      :
DANIEL CONSTRUCTION COMPANY, INC.;              :
                                                  :
**FISHER CONTROLS INTERNATIONAL, LLC**,         :
wholly owned subsidiary of EMERSON ELECTRIC     :
COMPANY;                                        :
                                                  :
**FLOWSERVE US INC.**, individually and as successor to :
BYRON JACKSON PUMP COMPANY;                     :
                                                  :
**FLUOR CONSTRUCTORS INTERNATIONAL**, f/k/a     :
FLUOR CORPORATION;                              :
                                                  :
**FLUOR CONSTRUCTORS INTERNATIONAL, INC.**;     :

1

**FLUOR DANIEL SERVICES CORPORATION**;          :
                                                 :
**FLUOR ENTERPRISES, INC.**;                     :
                                                 :
**GENERAL ELECTRIC COMPANY**;                    :
                                                 :
**GOULDS PUMPS, INC.**;                          :
                                                 :
**METROPOLITAN LIFE INSURANCE COMPANY**;         :
                                                 :
**MINE SAFETY APPLIANCES COMPANY, LLC**;         :
                                                 :
**PNEUMO ABEX, LLC**, successor in interest to ABEX   :
CORPORATION;                                     :
                                                 :
**SPX COOLING TECHNOLOGIES, INC.**, individually   :
and successor in interest to MARLEY COOLING      :
TOWERS CO.;                                      :
                                                 :
**THE DOW CHEMICAL COMPANY**; and                :
                                                 :
**WARNER ELECTRIC LLC**;                         :
     Defendants.        :

## CIVIL ACTION COMPLAINT

PLAINTIFF, **Charles Franklin Connor**, sues the above-named Defendants for compensatory and punitive damages, by and through their attorneys, Wallace and Graham, PA, hereby brings this Civil Action Complaint, and alleges:

## JURISDICTION AND VENUE

1.    This Court has personal jurisdiction over the Defendants because the Defendants are duly licensed to do business in the State of North Carolina and/or at all material times are or have been engaged in business in the State of North Carolina.

2.    Further, this Court has jurisdiction over the parties pursuant to 28 U.S.C.A. §1332 because the parties to the suit are completely diverse in that none of the Defendants are citizens

2

of the same state as the Plaintiff. The amount in controversy exceeds Seventy-Five Thousand Dollars ($75,000.00), exclusive of interest and costs.

3.  Pursuant to 28 U.S.C.A. §1391 (2), venue is proper in this judicial district because a substantial part of the events or omissions occurred in North Carolina.

4.  Plaintiff has satisfied all conditions precedent to the filing of this action. All of the named defendants are foreign corporations who are amenable to jurisdiction in the courts of North Carolina by virtue of their respective conduct of substantial and/or systematic business in North Carolina which subjects them to the jurisdiction of the North Carolina courts pursuant to the North Carolina Long-Arm Statute. At all material times, each defendant corporation used, mined, manufactured, processed, imported, converted, compounded, supplied, installed, replaced, repaired, incorporated into their product design, and/or retailed substantial amounts of asbestos and/or asbestos-containing products, materials, or equipment which were sold, distributed, and used in North Carolina. The Plaintiff, while working at various jobs, was exposed to various asbestos-containing products listed in paragraphs 6 through 27, for which asbestos exposure the Defendants are jointly & severally liable.

## PARTIES

5.  The Plaintiff, Charles Franklin Connor ("Plaintiff"), is a citizen of the State of North Carolina where he was exposed to asbestos during the course of his career.

6.  NORFOLK SOUTHERN RAILWAY COMPANY is a corporation organized under the laws of the State of Virginia with its principal place of business in Virginia. At all times material hereto, NORFOLK SOUTHERN RAILWAY COMPANY was and is a common carrier by rail; and for the purpose hereof did operate locomotives, railroad cars and repair facilities; has done and does substantial business in and about the State of North Carolina.

3

7.     Defendant, AIR & LIQUID SYSTEMS CORPORATION, individually and as successor-in- interest to BUFFALO PUMPS, was and is a company incorporated under the laws of the State of Pennsylvania with its principal place of business in Pennsylvania.  At all times material hereto, AIR & LIQUID SYSTEMS CORPORATION, individually and as successor-in- interest to BUFFALO PUMPS mined, manufactured, processed, imported, converted, compounded, supplied, installed, replaced, repaired, used, and/or retailed substantial amounts of asbestos and/or asbestos-containing products, materials, or equipment, including, but not limited to, asbestos-containing Buffalo Pumps.  AIR & LIQUID SYSTEMS CORPORATION, individually and as successor-in-interest to BUFFALO PUMPS has done and does business in the State of North Carolina.

8.     BW/IP, INC., individually and as successor to BYRON JACKSON PUMPS, was and is a company incorporated under the laws of the State of Delaware with its principal place of business in Texas. At all times material hereto, BW/IP, INC., individually and as successor to BYRON JACKSON PUMPS, mined, manufactured, processed, imported, converted, compounded, supplied, installed, replaced, repaired, used, and/or retailed substantial amounts of asbestos and/or asbestos-containing products, materials, or equipment, including, but not limited to, asbestos containing Byron Jackson Pumps. BW/IP, INC., individually and as successor to BYRON JACKSON PUMPS, has done and does business in the State of North Carolina.

9.     CARRIER CORPORATION was and is a company incorporated under the laws of the State of Delaware with its principal place of business in Florida. At all times material hereto, CARRIER CORPORATION, mined, manufactured, processed, imported, converted, compounded, supplied, installed, replaced, repaired, used, and/or retailed substantial amounts of asbestos and/or asbestos-containing products, materials, or equipment, including, but not limited

4

to, asbestos containing Carrier Air Compressors. CARRIER CORPORATION has done and does business in the State of North Carolina.

10.     Defendant, COVIL CORPORATION, was and is a company incorporated under the laws of the State of South Carolina with its principal place of business in South Carolina. At all times material hereto, COVIL CORPORATION, mined, manufactured, processed, imported, converted, compounded, supplied, installed, replaced, repaired, used, and/or retailed substantial amounts of asbestos and/or asbestos-containing products, materials, or equipment, including, but not limited to, thermal insulation products. COVIL CORPORATION has done and does business in the State of North Carolina.

11.     CRANE CO., was and is a company incorporated under the laws of the State of Delaware with its principal place of business in Connecticut. At all times material hereto, CRANE CO., mined, manufactured, processed, imported, converted, compounded, supplied, installed, replaced, repaired, used, and/or retailed substantial amounts of asbestos and/or asbestos-containing products, materials, or equipment, including, but not limited to, asbestos containing Crane valves, Cranite gaskets, and Chempump pumps. CRANE CO., has done and does business in the State of North Carolina.

12.     DANA COMPANIES LLC, successor-by- merger to WARNER BRAKE AND CLUTCH COMPANY, was and is a company incorporated under the laws of the State of Virginia with its principal place of business in Ohio. At all times material hereto, DANA COMPANIES LLC, successor-by- merger to WARNER BRAKE AND CLUTCH COMPANY, mined, manufactured, processed, imported, converted, compounded, supplied, installed, replaced, repaired, used, and/or retailed substantial amounts of asbestos and/or asbestos-containing products, materials, or equipment, including, but not limited to, asbestos containing brakes. DANA COMPANIES LLC, successor-by-

merger to WARNER BRAKE AND CLUTCH COMPANY, has done and does business in the State of North Carolina.

13.     Defendant, DANIEL INTERNATIONAL CORPORATION f/k/a DANIEL CONSTRUCTION COMPANY, INC., was and is a company incorporated under the laws of the State of South Carolina with its principal place of business in South Carolina. At all times material hereto, DANIEL INTERNATIONAL CORPORATION f/k/a DANIEL CONSTRUCTION COMPANY, INC., mined, manufactured, processed, imported, converted, compounded, supplied, installed, replaced, repaired, used, and/or retailed substantial amounts of asbestos and/or asbestos-containing products, materials, or equipment, including, but not limited to, removal and installation of asbestos containing insulation. DANIEL INTERNATIONAL CORPORATION f/k/a DANIEL CONSTRUCTION COMPANY, INC. has done and does business in the State of North Carolina.

14.     Defendant, FISHER CONTROLS INTERNATIONAL, LLC, wholly owned subsidiary of EMERSON ELECTRIC COMPANY was and is a company incorporated under the laws of the State of Delaware with its principal place of business in Florida. At all times material hereto, FISHER CONTROLS INTERNATIONAL, LLC, wholly owned subsidiary of EMERSON ELECTRIC COMPANY, mined, manufactured, processed, imported, converted, compounded, supplied, installed, replaced, repaired, used, and/or retailed substantial amounts of asbestos and/or asbestos-containing products, materials, or equipment, including, but not limited to, asbestos containing Fisher Valves. FISHER CONTROLS INTERNATIONAL, LLC, wholly owned subsidiary of EMERSON ELECTRIC COMPANY has done and does business in the State of North Carolina.

15.     Defendant, FLOWSERVE US INC., individually and as successor to BYRON JACKSON PUMP COMPANY, was and is a company incorporated under the laws of the State of Delaware with its principal place of business in Texas. At all times material hereto, FLOWSERVE US

INC., individually and as successor to BYRON JACKSON PUMP COMPANY, mined, manufactured, processed, imported, converted, compounded, supplied, installed, replaced, repaired, used, and/or retailed substantial amounts of asbestos and/or asbestos-containing products, materials, or equipment, including, but not limited to, asbestos containing Byron Jackson Pumps. FLOWSERVE US INC., individually and as successor to BYRON JACKSON PUMP COMPANY has done and does business in the State of North Carolina.

16.     Defendant, FLUOR CONSTRUCTORS INTERNATIONAL, f/k/a FLUOR CORPORATION**,** was and is a company incorporated under the laws of the State of California with its principal place of business in Texas. At all times material hereto, FLUOR CONSTRUCTORS INTERNATIONAL, f/k/a FLUOR CORPORATION, mined, manufactured, processed, imported, converted, compounded, supplied, installed, replaced, repaired, used, and/or retailed substantial amounts of asbestos and/or asbestos-containing products, materials, or equipment, including, but not limited to, removal and installation of asbestos containing insulation. FLUOR CONSTRUCTORS INTERNATIONAL, f/k/a FLUOR CORPORATION, has done and does business in the State of North Carolina.

17.     Defendant, FLUOR CONSTRUCTORS INTERNATIONAL, INC., was and is a company incorporated under the laws of the State of California with its principal place of business in Texas. At all times material hereto, FLUOR CONSTRUCTORS INTERNATIONAL, INC. mined, manufactured, processed, imported, converted, compounded, supplied, installed, replaced, repaired, used, and/or retailed substantial amounts of asbestos and/or asbestos-containing products, materials, or equipment, including, but not limited to, removal and installation of asbestos containing insulation. FLUOR CONSTRUCTORS INTERNATIONAL, INC., has done and does business in the State of North Carolina.

18.     Defendant, FLUOR DANIEL SERVICES CORPORATION, was and is a company incorporated under the laws of the State of Delaware with its principal place of business in Texas. At all times material hereto, FLUOR DANIEL SERVICES CORPORATION, mined, manufactured, processed, imported, converted, compounded, supplied, installed, replaced, repaired, used, and/or retailed substantial amounts of asbestos and/or asbestos-containing products, materials, or equipment, including, but not limited to, removal and installation of asbestos containing insulation. FLUOR DANIEL SERVICES CORPORATION has done and does business in the State of North Carolina.

19.     Defendant, FLUOR ENTERPRISES, INC., was and is a company incorporated under the laws of the State of California with its principal place of business in California. At all times material hereto, FLUOR ENTERPRISES, INC., mined, manufactured, processed, imported, converted, compounded, supplied, installed, replaced, repaired, used, and/or retailed substantial amounts of asbestos and/or asbestos-containing products, materials, or equipment, including, but not limited to, removal and installation of asbestos containing insulation. FLUOR ENTERPRISES, INC., has done and does business in the State of North Carolina.

20.     Defendant, GENERAL ELECTRIC COMPANY, was and is a company incorporated under the laws of the State of New York with its principal place of business in Connecticut.  At all times material hereto, GENERAL ELECTRIC COMPANY mined, manufactured, processed, imported, converted, compounded, supplied, installed, replaced, repaired, used, and/or retailed substantial amounts of asbestos and/or asbestos-containing products, materials, or equipment, including, but not limited to, asbestos-containing General Electric Company turbines.  GENERAL ELECTRIC COMPANY has done and does business in the State of North Carolina.

21.     Defendant, GOULDS PUMPS, INC. was and is a company incorporated under the laws of the State of Delaware with its principal place of business in New York.  At all times material

hereto, GOULDS PUMPS, INC. mined, manufactured, processed, imported, converted, compounded, supplied, installed, replaced, repaired, used, and/or retailed substantial amounts of asbestos and/or asbestos-containing products, materials, or equipment, including, but not limited to, asbestos-containing Goulds pumps. GOULDS PUMPS, INC. has done and does business in the State of North Carolina.

22. Defendant, METROPOLITAN LIFE INSURANCE COMPANY, was and is a company incorporated under the laws of the State of New York with its principal place of business in New York. METROPOLITAN LIFE INSURANCE COMPANY has done and does business in the State of North Carolina. Metropolitan Life Insurance Company is named as a conspiracy defendant.

23. Defendant, MINE SAFETY APPLIANCES COMPANY, LLC, was and is a company incorporated under the laws of the State of Pennsylvania with its principal place of business in Pennsylvania. After due diligence, Plaintiffs are unable to ascertain the citizenship of the members of MINE SAFETY APPLIANCES COMPANY, LLC. At all times material hereto, MINE SAFETY APPLIANCES COMPANY, LLC mined, manufactured, processed, imported, converted, compounded, supplied, installed, replaced, repaired, used, and/or retailed substantial amounts of asbestos and/or asbestos-containing products, materials, or equipment, including, but not limited to, asbestos containing Mine Safety Appliances Company masks and asbestos gloves. MINE SAFETY APPLIANCES COMPANY, LLC has done and does business in the State of North Carolina.

24. Defendant, PNEUMO ABEX, LLC, successor in interest to ABEX CORPORATION, was and is a company incorporated under the laws of the State of Delaware with its principal place of business in New Jersey. After due diligence, Plaintiffs are unable to ascertain the citizenship of the members of PNEUMO ABEX, LLC, successor in interest to ABEX CORPORATION. At all times

9

material hereto, PNEUMO ABEX, LLC, successor in interest to ABEX CORPORATION, mined, manufactured, processed, imported, converted, compounded, supplied, installed, replaced, repaired, used, and/or retailed substantial amounts of asbestos and/or asbestos-containing products, materials, or equipment, including, but not limited to, asbestos containing brakes. PNEUMO ABEX, LLC, successor in interest to ABEX CORPORATION has done and does business in the State of North Carolina.

25.    Defendant, SPX COOLING TECHNOLOGIES, INC., individually and successor in interest to MARLEY COOLING TOWERS CO., was and is a company incorporated under the laws of the State of Delaware with its principal place of business in Kansas.  After due diligence, Plaintiffs are unable to ascertain the citizenship of the members of SPX COOLING TECHNOLOGIES, INC., individually and successor in interest to MARLEY COOLING TOWERS CO. At all times material hereto, SPX COOLING TECHNOLOGIES, INC., individually and successor in interest to MARLEY COOLING TOWERS CO., mined, manufactured, processed, imported, converted, compounded, supplied, installed, replaced, repaired, used, and/or retailed substantial amounts of asbestos and/or asbestos-containing products, materials, or equipment, including, but not limited to, asbestos containing Marley cooling towers. SPX COOLING TECHNOLOGIES, INC., individually and successor in interest to MARLEY COOLING TOWERS CO. has done and does business in the State of North Carolina.

26.    Defendant, THE DOW CHEMICAL COMPANY, was and is a company incorporated under the laws of the State of Delaware with its principal place of business in Michigan. At all times material hereto, THE DOW CHEMICAL COMPANY, mined, manufactured, processed, imported, converted, compounded, supplied, installed, replaced, repaired, used, and/or retailed substantial amounts of asbestos and/or asbestos-containing products, materials,

or equipment, including, but not limited to, removal and installation of asbestos containing insulation. THE DOW CHEMICAL COMPANY has done and does business in the State of North Carolina.

27.     Defendant, WARNER ELECTRIC LLC, was and is a company incorporated under the laws of the State of Delaware with its principal place of business in Massachusetts.  After due diligence, Plaintiffs are unable to ascertain the citizenship of the members of WARNER ELECTRIC LLC.  At all times material hereto, WARNER ELECTRIC LLC, mined, manufactured, processed, imported, converted, compounded, supplied, installed, replaced, repaired, used, and/or retailed substantial amounts of asbestos and/or asbestos-containing products, materials, or equipment, including, but not limited to, asbestos containing Warner Electric brakes. WARNER ELECTRIC LLC has done and does business in the State of North Carolina.

28.     Plaintiff Charles Franklin Connor experienced further occupational exposure as a result of contractors working with asbestos containing equipment and/or thermal insulation products in the immediate vicinity of Plaintiff Charles Franklin Connor at his work site.  These contractors include, but may not be not limited to, the following entities:   DANIEL INTERNATIONAL CORPORATION f/k/a DANIEL CONSTRUCTION COMPANY, INC.; FLUOR CONSTRUCTORS INTERNATIONAL, f/k/a FLUOR CORPORATION; FLUOR CONSTRUCTORS   INTERNATIONAL,   INC.;   FLUOR   DANIEL   SERVICES CORPORATION; FLUOR ENTERPRISES, INC.; COVIL CORPORATION; and THE DOW CHEMICAL COMPANY (collectively, hereinafter the "Contractor Defendants"). All other Defendants, (but for NORFOLK SOUTHERN RAILWAY COMPANY, Contractor Defendants, and METROPOLITAN LIFE INSURANCE COMPANY, hereinafter, the "Non-Railroad Defendants") manufactured, sold, and/or distributed asbestos-containing products or raw

asbestos materials for use in North Carolina and other states at times relevant to this action. That at all times relevant to this action, the Non-Railroad Defendants and the predecessors of the Non-Railroad Defendants for whose actions the Non-Railroad Defendants are legally responsible, were engaged in the manufacture, sale, and distribution of asbestos-containing products and raw material.

## BACKGROUND FACTS

29.     Plaintiff brings this action for monetary damages as a result of Plaintiff contracting an asbestos-related disease.

30.     Plaintiff was diagnosed with Mesothelioma on October 12, 2016.

31.     Plaintiff's exposure to asbestos occurred during the course of his employment.

32.     During his work history, Plaintiff worked in employment capacities including but not limited to, machinist, production foreman and training supervisor.

33.     Plaintiff was exposed to various asbestos-containing products while working at job sites including NORFOLK SOUTHERN RAILWAY COMPANY in Spencer, NC from approximately 1943 until 1944; and again from1946 to 1963.

34.     During his employment by NORFOLK SOUTHERN RAILWAY COMPANY, Plaintiff was required to work with or in the vicinity of toxic substances, including asbestos and asbestos-containing products.  As a result, Plaintiff Charles Franklin Connor was exposed to asbestos through his work for NORFOLK SOUTHERN RAILWAY COMPANY, which caused him to develop mesothelioma.

35.     Plaintiff was further exposed to various asbestos-containing products while employed at Fiber Industries (a/k/a Hoechst Celanese) in Salisbury, North Carolina from approximately 1966 until 1982.

12

36.     During his work history, the Plaintiff worked with, or in close proximity to others who worked with, asbestos-containing materials including but not limited to asbestos pipe covering, gaskets, turbines, boilers, and other asbestos-containing materials.

**FIRST CAUSE OF ACTION**
**AS TO NORFOLK SOUTHERN RAILWAY**
**COMPANY FEDERAL EMPLOYERS' LIABILITY ACT**

37.     Plaintiff alleges the foregoing paragraphs as if set forth fully herein.

38.     That NORFOLK SOUTHERN RAILWAY COMPANY, by and through its duly authorized agents, servants and employees, was then and there guilty of one or more of the following negligent acts or omissions in violation of the Federal Employer's Liability Act:

(a)     In failing to provide Plaintiff with a reasonably safe place within which to work;

(b)     In failing to furnish Plaintiff with safe and suitable tools and equipment including adequate protective masks and/or protective inhalation devices;

(c)     In failing to warn Plaintiff of the true nature and hazardous effects of the asbestos and other dusty materials;

(d)     In failing to operate the locomotive repair facility in a safe and reasonable manner;

(e)     In failing to provide instructions or a method for the safe use of asbestos and other toxic airborne substances;

(f)     In failing to provide adequate, if any, instructions in the use or removal of old insulation products;

(g)     In failing to test asbestos-containing products prior to requiring employees to work with or around the same, to determine their ultra-hazardous nature;

(h)     In formulating and using a method of handling asbestos and asbestos-related materials exposing Plaintiff to high concentrations of asbestos fibers;

(i)     In failing to provide Plaintiff with safe and proper ventilation systems in the locomotive repair facility;

(j)     In allowing unsafe practices to become the standard practice;

13

(k)     In failing to exercise reasonable care in publishing and enforcing a safety plan and method of handling and installing said asbestos and asbestos insulation materials and other asbestos-containing products;

(l)     In failing to inquire of the suppliers of asbestos-containing products, the hazardous nature of asbestos;

(m)     In requiring employees to work with an ultra-hazardous product;

(n)     In failing to exercise adequate, if any, care for the health and safety of employees, including the Plaintiff;

(o)     In failing to periodically test and examine Plaintiff to determine if he was subject to any ill effects of his exposure to asbestos-related products and other hazardous substances;

(p)     In failing to periodically inspect their locomotives, boilers, and their appurtenances in order to ascertain any contamination by asbestos fiber;

(q)     In failing to provide any or adequate warning to the Plaintiff regarding exposure to a known carcinogen: asbestos.

39.     That as a direct and proximate result, in whole or in part, of one or more of the foregoing negligent acts or omissions on the part of NORFOLK SOUTHERN RAILWAY COMPANY, Plaintiff suffered exposure to toxic substances, including asbestos and asbestos-containing materials, which caused him to sustain severe injury to his body and respiratory system.

40.     Plaintiff further alleges that, as a result of Plaintiff's diagnosis of mesothelioma, medical expenses by way of doctor, hospital and drugs are being incurred.

**SECOND CAUSE OF ACTION**
**AS TO NORFOLK SOUTHERN**
**RAILWAY COMPANY BOILER INSPECTION ACT**

41.     Plaintiff alleges the foregoing paragraphs as if set forth fully herein.

42.     That from approximately 1943 until 1944, and again from 1946 to 1963, Plaintiff Charles Franklin Connor was employed by NORFOLK SOUTHERN RAILWAY COMPANY within the State of North Carolina and continued in his employment in this and other capacities

working on in proximity to locomotives, boilers and their appurtenances, and was engaged in the performance of his duties at the time he was exposed to asbestos and asbestos-containing materials and other toxic substances. As a result, Plaintiff Charles Franklin Connor was exposed to asbestos through his work for NORFOLK SOUTHERN RAILWAY COMPANY, which caused him to develop mesothelioma.

43.    That at said time and subsequent thereto NORFOLK SOUTHERN RAILWAY COMPANY was engaged in interstate commerce as a common carriers by rail, by reason whereof the rights and liabilities of the parties were and are governed by the Act of Congress known as the Locomotive Boiler Inspection Act, 45 U.S.C., Sections 22-34.

44.    That NORFOLK SOUTHERN RAILWAY COMPANY, by and through its agents, servants and employees, violated the Locomotive Boiler Inspection Act, in that it failed to provide Plaintiff with a locomotive and its appurtenances which were in a proper and safe condition, and safe to work on or about, by committing one or more of the acts or omissions hereinbefore alleged in Paragraph 22 of Plaintiff's Complaint. As a result, Plaintiff Charles Franklin Connor was exposed to asbestos through his work for the NORFOLK SOUTHERN RAILWAY COMPANY, which caused him to develop mesothelioma.

45.    That as a direct and proximate result, in whole or in part, of one or more of the above foregoing acts or omissions on the part of NORFOLK SOUTHERN RAILWAY COMPANY, Plaintiff was forced to work on or about defective and unsafe locomotives. As a result, Plaintiff Charles Franklin Connor was exposed to asbestos through his work for NORFOLK SOUTHERN RAILWAY COMPANY, which caused him to develop mesothelioma.

# THIRD CAUSE OF ACTION
## NEGLIGENT FAILURE TO WARN, DEFECTIVE DESIGN
### (Against Non-Railroad Defendants and Contractor Defendants)

46.     Plaintiff incorporates by reference the preceding paragraphs as if fully set forth herein.

47.     At all material times, Defendants are or were miners, manufacturers, distributors, processors, importers, converters, compounders, and/or retailers of asbestos and/or asbestos-containing products, materials or equipment, or, are otherwise jointly and severally liable due to their involvement in the underlying facts.

48.     The Defendants, acting through their agents, servants, and/or employees caused, and have caused in the past, certain asbestos and asbestos-containing materials, products or equipment to be placed in the stream of interstate commerce with the result of that said asbestos and asbestos-containing materials, products or equipment came into use by the Plaintiff or by coworkers who were working with asbestos-containing materials in close proximity to the Plaintiff.

49.     Throughout the course of his employment, Plaintiff worked with and was exposed to the asbestos and asbestos-containing materials, products or equipment mined, manufactured, processed, imported, converted, compounded, and/or sold by the Defendants, most or all of the exposure being within the State of North Carolina.

50.     During the course and scope of his employment, Plaintiff was exposed to Defendants' asbestos and asbestos-containing materials, products or equipment, which exposure directly and proximately caused him to develop an illness known and designated as Mesothelioma.

51.     Defendants, acting by and through their servants, agents and employees, duly authorized and acting within the scope and authority of their employment, had a duty to design, manufacture and sell products that were not unreasonably dangerous or defective and/or a duty to warn the Plaintiff and foreseeable users of said products of the dangers and defects which the Defendants created, knew, or, within the exercise of reasonable care, should have known.

52.     Plaintiff, whose livelihood was dependent upon the work that he did for the various employers listed herein, was required to work with and around asbestos and/or asbestos-containing products, materials or equipment that manufactured, processed, distributed, supplied and/or sold by Defendants. Defendants knew, or should have known, that persons employed as Plaintiff would be required to and would come into contact with and would work in close proximity to said products.

53.     Plaintiff sustained injuries caused by no fault of his own and which could not be avoided through the use of reasonable care. Plaintiff's development of an asbestos-related disease was directly and proximately caused by the negligence and carelessness of Defendants in that they manufactured, processed, sold, supplied or otherwise put said asbestos or asbestos-containing products, materials or equipment, into the market and into the stream of interstate commerce, while they knew, or in the exercise of ordinary care should have known, that said products were deleterious, poisonous, cancer-causing and/or inherently dangerous and harmful to Plaintiff's body, lungs, respiratory system, skin, health, and general well-being. Further, Defendants knew or in the exercise of reasonable care should have known that Plaintiff would not know of such danger to his health.

54.     Plaintiff's illness and disability are the direct and proximate result of the negligence and carelessness of Defendants, jointly and severally, in that, even though the

Defendants knew, or in the exercise of ordinary care should have known, that the asbestos and asbestos-containing materials, products or equipment were deleterious, poisonous, and highly harmful to Plaintiff's body, lungs, respiratory system, skin, and health.

55. The relevant Defendants breached their duties and were negligent in the following acts and/or omissions:

(a) Failed to advise Plaintiff of the dangerous characteristics of their asbestos and/or asbestos-containing materials, products or equipment;

(b) Failed or omitted to provide the Plaintiff with the knowledge as to what would be reasonably safe and sufficient apparel and protective equipment and appliances to reduce exposure to inhalable asbestos fibers, if in truth they were in any way able to protect him from being poisoned and disabled as he was by exposure to such deleterious and harmful asbestos-containing materials, products or equipment;

(c) Failed and omitted to place any warnings or sufficient warnings on their containers of said asbestos and asbestos-containing materials, products or equipment to warn the handlers of the dangers to health in coming in contact with said asbestos and asbestos-containing materials, products or equipment;

(d) Failed and omitted to take reasonable precautions or to exercise reasonable care to publish, adopt, and enforce a safety plan and a safe method of handling and installing said asbestos-containing materials, products or equipment;

(e) Inadequately warned, if, in fact, they warned at all, persons such as Plaintiff of the dangers to their health in coming in contact with and breathing said asbestos fibers from asbestos and/or asbestos-containing materials, products or equipment;

(f) Did not recommend methods to improve the work environment;

(g) Did not develop alternative products;

(h) Continued to use a known cancer-causing product, to-wit: asbestos; and

(i) After discovering that the asbestos exposure caused a progressive lung disease, the Defendants did not inform the Plaintiff of the need for monitoring and periodic evaluations up to and including the filing of this complaint.

18

56.     Defendants, at the time of designing, manufacturing, distributing, selling, or otherwise placing asbestos and/or asbestos-containing products, materials or equipment into the stream of commerce, knew, or in the exercise of reasonable care, should have known about the risks associated with their products. The products in question were defective at the time they left the control of the Defendants.

57.     The relevant Defendants who were involved in manufacturing, designing and producing the asbestos-containing products herein had a duty to use reasonable care throughout the manufacturing process, including making sure the product is free of any potentially dangerous defect in manufacturing or design.

58.     Under N.C. Gen. Stat. § 99B-5, the relevant Defendants are liable for negligent failure to warn and inadequate warning or instruction, in that they were each a manufacturer or seller of a product who acted unreasonably in failing to provide such warning or instruction.  The failure to provide adequate warning or instruction was a proximate cause of the harm for which damages are sought.   At the time the relevant asbestos-containing products left the control of the relevant Defendant manufacturers or sellers, the products, without an adequate warning or instruction, created an unreasonably dangerous condition that the manufacturer or seller knew, or in the exercise of ordinary care should have known, posed a substantial risk of harm to a reasonably foreseeable claimant.

59.     In the alternative, after the relevant asbestos-containing products left the control of the relevant Defendant manufacturer or sellers, the manufacturers or sellers became aware of or in the exercise of ordinary care should have known that the product posed a substantial risk of harm to a reasonably foreseeable user or consumer and failed to take reasonable steps to give adequate warning or instruction or to take other reasonable action under the circumstances.

60. While non-asbestos alternative designs and formulations of the relevant products and equipment were available prior to when some or all of the Plaintiff's injurious exposure occurred, the relevant Defendants negligently failed to adopt a non-asbestos design and formulation during the pertinent times.

61. Under N.C. Gen. Stat. § 99B-6, the relevant Defendants are liable for inadequate design or formulation in that they qualify as manufacturers within the scope of the statute and they acted unreasonably in designing or formulating the product when there was a safer, practical, feasible, and otherwise reasonable alternative design or formulation.

62. During some or all of the pertinent times, asbestos-free product designs and formulations could have accomplished the same functions as the asbestos products.

63. Defendants were negligent and breached their duty of due care to Plaintiff by taking or failing to take the actions as previously alleged to avoid harm to the Plaintiff and other foreseeable users, in light of the reasonably foreseeable dangers caused by the design, manufacture, sale, distribution of the asbestos and/or asbestos-containing products, materials or equipment at issue in the stream of commerce.

64. The hazards posed by exposure to asbestos and/or asbestos-containing products, materials or equipment and the resulting injuries and damages to Plaintiff were reasonably foreseeable, or should have been reasonably foreseen by Defendants.

65. As a direct and proximate result of the aforesaid negligent acts and/or omissions by the Defendants, the Plaintiff developed Mesothelioma, as a consequence of which, through no fault of his own, he is severely injured, disabled and damaged.

66. As a result of the above, Plaintiff seeks damages as are hereinafter demanded.

## FOURTH CAUSE OF ACTION
## BREACH OF IMPLIED WARRANTY
**(Against Non-Railroad Defendants and Contractor Defendants)**

67. Plaintiff incorporates by reference the preceding paragraphs as if fully set forth herein.

68. The Defendants impliedly warranted that said asbestos materials were of good and merchantable quality and fit for their intended use.

69. The implied warranty made by the Defendants that the asbestos and asbestos-containing materials, products, or equipment were of good and merchantable quality and for the particular intended use was breached and that certain harmful, poisonous, and deleterious matter was given off into the atmosphere wherein the Plaintiff carried out his duties while working with or in the vicinity of asbestos and asbestos-containing materials, products, or equipment.

70. As a direct and proximate result of the implied warranty of good and merchantable quality and fitness for the particular intended use, Plaintiff developed an illness, to-wit: Mesothelioma.

71. As a result of the above, Plaintiff seeks damages as are hereinafter demanded.

## FIFTH CAUSE OF ACTION
## GROSS NEGLIGENCE; WILLFUL, WANTON, AND RECKLESS CONDUCT
**(Against Non-Railroad Defendants and Contractor Defendants)**

72. Plaintiff incorporates by reference the preceding paragraphs as if fully set forth herein.

73. Plaintiff and others in his position worked in close proximity to the asbestos and asbestos-related materials used, sold or manufactured by the Defendants, and the exposure and hazard to each of them, in Plaintiff's presence, as well as others in his position, was known, or in the exercise of reasonable care should have been anticipated, by the Defendants, and each of

them.

74.     The Defendants have known or should have known for decades of medical and scientific data which clearly indicates that the products, asbestos and asbestos-containing products, were hazardous to the health and safety of the Plaintiff and others in the Plaintiff's position, and prompted by pecuniary motives, the Defendants, individually and collectively, ignored and failed to act upon said medical and scientific data and conspired to deprive the public, and particularly the users, of said medical and scientific data, depriving them, therefore, of the opportunity of free choice as to whether or not to expose themselves to the asbestos products of said Defendants. As a result, the Plaintiff has been severely damaged as is set forth below.

75.     The Defendants intentionally and fraudulently continued to conceal the dangers of asbestos exposure for many decades, thus denying Plaintiff the knowledge with which to take necessary safety precautions such as periodic x-rays and medical examinations, stop smoking, and avoiding further dust exposure. Specifically, Defendants' intentional and fraudulent conduct included the following acts and omissions:

(a)     failure to warn prior users when the Defendants had knowledge of the need for monitoring due to prior exposure;

(b)     failure to issue recall type letters to prior users;

(c)     frustrating the publication of articles and literature from the 1930's through at least 1976;

(d)     rejection by top management of advice of corporate officials to warn of the hazards of their asbestos products; such rejection being motivated by the possibility of adverse effects on profits; and

(e)     The intentional inadequacy of (and delay in the use of) the warnings on asbestos products.

76.     The acts of the Defendants, and each of them, as hereinabove set forth were

intentional and willful and done with willful disregard of the safety of Plaintiff and others similarly situated at a time when Defendants, and each of them, had knowledge, or should have had knowledge of the dangerous effect of asbestos and asbestos-containing materials, products or equipment upon the body of human beings, including Plaintiff arid others similarly situated, and even though forewarned by tests, standards, promulgations of rules and regulations, statutes, and ordinances recognized by the Defendants and subscribed to by them, nevertheless placed into the stream of commerce, for their own profit, this dangerous asbestos material with full knowledge that it was being used and would be used in the future to the detriment of the health of Plaintiff and others similarly situated, and Plaintiff is thereby entitled to punitive damages.

77.     Accordingly, as a result of the Defendants' conduct in which they acted in willful, wanton, gross negligence and in total disregard for the health and safety of the user or consumer, such as Plaintiff, Plaintiff therefore seeks exemplary and punitive damages against Defendants to punish the Defendants for their actions, which were willful, wanton, gross, and in total disregard of the health and safety of the users and consumers of their products.

78.     The Defendants' above-described recurring conduct, acts, omissions, negligence, and impropriety included aggravating factors giving rise to a claim of punitive damages under Chapter 1D of the North Carolina General Statutes.

79.     Pursuant to N.C. Gen. Stat. § 1D-15(a), each Defendant is properly liable for punitive damages in this action in that Defendant is liable for compensatory damages and has committed one or more aggravating acts or omissions justifying an award of punitive damages, including without limitation, recurring acts of egregious and reckless behavior, and specific instances of willful and wanton conduct.

80.     The recurring conduct, acts, omissions, negligence, and impropriety of the

Defendants were willful, wanton, malicious, and in reckless disregard for the rights and interests of the Plaintiff and justify an award of punitive damages. Accordingly, Plaintiff demands judgment against Defendant for punitive damages in an amount to be determined at trial.

## SIXTH CAUSE OF ACTION
## FAILURE TO WARN
### (Against Non-Railroad Defendants and Contractor Defendants)

81.     Plaintiff incorporates by reference the preceding paragraphs as if fully set forth herein.

82.     At all times material hereto, the Defendants knew or should have known of the harmful effects and/or harmful dangers of working with asbestos and/or asbestos-containing products, materials, or equipment and that exposures to inhalable asbestos fibers caused and/or significantly contributed to the Plaintiff's development of Mesothelioma.

83.     Defendants had a duty to warn individuals working at the Plaintiff's jobsites, including but not limited to Plaintiff, of the dangers associated with the use and/or inhalation of asbestos dust and fibers.

84.     Despite Defendants' knowledge of the harm and/or potential harm associated with the use and/or inhalation of dust and fibers from asbestos and/or asbestos-containing products, materials, or equipment, the Defendants failed to warn and/or inadequately warned Plaintiff of the dangers, including but not limited to:

(a)     Failing to properly enclose, encapsulate, seal, contain and/or safeguard the worksite in and around asbestos-containing materials in order to prevent the escape and/or release into the surrounding area of airborne asbestos fibers;

(b)     Failing to properly warn Plaintiff of the presence of airborne asbestos fibers which had been released in the air as a direct and proximate result of the Defendants, their employees, agents and/or servants;

(c)     Failing to properly label areas of the plant, plant appurtenances and structures, including but not limited to, building insulation, pipes, boilers,

walls, ceilings, floors, and other areas as to the existence of friable or potentially friable asbestos- containing material;

(d)     Failing to take reasonable precautions to publish, disseminate or otherwise make available to Plaintiff, warnings of the dangerous nature of the existence in the plant of asbestos and/or asbestos-containing material and/or prepare, implement or disseminate any reasonable plan to protect the Plaintiff from overall exposure to asbestos-containing materials.

(e)     Otherwise failing to act reasonably under the totality of the circumstances.

85.     Despite Defendants' knowledge of the harm and/or potential harm associated with the use and/or inhalation of dust and fibers from asbestos and/or asbestos-containing products, materials, or equipment, the Defendants acted unreasonably in failing to provide adequate warnings and/or instructions as to the hazards associated with exposure to asbestos and/or asbestos-containing products, materials, or equipment.

86.     As a direct and proximate result of the Defendants' failure to warn, the Plaintiff suffered and will continue to suffer the irreparable harm, injury and damages, as described herein.

## SEVENTH CAUSE OF ACTION
## ALLEGATIONS AGAINST CONTRACTOR DEFENDANTS

87.     Plaintiff Charles Franklin Connor worked at premises owned and/or controlled by the Contractor Defendants at which he was exposed to asbestos products and dust from asbestos products.

88.     While present at the premises owned and/or controlled by the Contractor Defendants, Plaintiff Charles Franklin Connor was continuously exposed to asbestos and asbestos-containing dust without the provision of appropriate safeguards by the Contractor Defendants who had the responsibility for such safeguards.

89.     Plaintiff would further show that Plaintiff Charles Franklin Connor's injuries and

diseases were the result of intentional acts and/or omissions and/or negligence, gross negligence and malice in the use of asbestos at premises owned and/or controlled by the Contractor Defendants. Contractor Defendants failed to properly remove and/or abate said asbestos at their facilities during the time Plaintiff Charles Franklin Connor was working there.

90.     Plaintiff would show that Contractor Defendants were negligent, grossly negligent and malicious, and committed certain intentional acts, all of which were the proximate cause of the disease and injuries resulting in mesothelioma from exposure to asbestos.

91.     In particular, Plaintiff would show that Contractor Defendants demonstrated such an entire want of care as to establish that their acts and omissions were the result of actual conscious indifference to the rights, safety, and welfare of Plaintiff Charles Franklin Connor, and that such intentional acts and omissions proximately caused Plaintiff Charles Franklin Connor's disease and injuries.

92.     Specific intentional acts and acts constituting negligence, gross negligence and malice committed by Contractor Defendants that proximately caused Charles Franklin Connor's injuries and disease include:

(a)     Failure to provide safe equipment for Plaintiff Charles Franklin Connor to use;

(b)     Failure to provide adequate safety measures and protection against deadly and life threatening asbestos dust, all despite Contractor Defendants' knowledge of the extreme risk of harm inherent to asbestos exposure;

(c)     Failure to adequately warn Plaintiff Charles Franklin Connor of the inherent dangers of asbestos contamination;

(d)     Failure to maintain the ambient and environmental conditions of the premise in proper and safe condition;

(e)     Failure to follow and adhere to various states and U.S. Government statutes, regulations and guidelines pertaining to asbestos and the exposure to asbestos of individuals. Such failure constituted negligence per se at a minimum.

93.     Plaintiff would further show that Contractor Defendants intentionally, knowingly, and/or due to negligence, gross negligence and malice, failed to ensure that individuals such as Plaintiff Charles Franklin Connor were protected from the inhalation of asbestos and asbestos fibers.  Such actions proximately caused Plaintiff Charles Franklin Connor's injuries and illness.

94.     Additionally, specific actions or omissions on the part of Contractor Defendants that proximately caused Plaintiff Charles Franklin Connor's injuries and illness were:

(a)     Attempting to remove asbestos dust in Plaintiff Charles Franklin Connor's workplace without taking adequate precautions for the protection of workers in the vicinity and/or in the premises generally;

(b)     Failing to provide proper protective gear for individuals exposed to asbestos;

(c)     Failing to provide adequate ventilation to ensure that individuals in the vicinity were not exposed to asbestos;

(d)     Failing to provide a proper and safe method for the use of asbestos and asbestos fibers;

(e)     Failing to adhere to industry safe standards and other established measures to protect workers from harm; and

(f)     Failing to adequately warn of the extreme risk of danger of inherent to asbestos exposure.

95.     Contractor Defendants demonstrated such an entire want of care as to establish that its acts and omissions alleged above were the result of actual conscious indifference to the rights, safety, and welfare of Plaintiff Charles Franklin Connor.

## EIGHTH CAUSE OF ACTION
## CONSPIRACY
### (Against Defendant METROPOLITAN LIFE INSURANCE COMPANY)

96.     Defendant METROPOLITAN LIFE INSURANCE COMPANY rendered substantial aid and assistance to the manufacturers of asbestos-containing products and/or equipment to which Plaintiff Charles Franklin Connor was exposed, and such assistance by METROPOLITAN LIFE INSURANCE COMPANY aided and abetted the negligence and the marketing of unreasonably dangerous asbestos-containing products and/or equipment by such

manufacturers which proximately caused Plaintiff Charles Franklin Connor's illness, injuries, and/or disabilities.

97.     In both conducting tests and in publishing their alleged results, METROPOLITAN LIFE INSURANCE COMPANY failed to exercise reasonable care to conduct or publish complete, adequate and accurate tests of the health effects of asbestos.  METROPOLITAN LIFE INSURANCE COMPANY also caused to be published intentionally false, misleading, inaccurate and deceptive information about the health effects of asbestos exposure.

98.     Plaintiff Charles Franklin Connor unwittingly but justifiably relied upon the thoroughness of METROPOLITAN LIFE INSURANCE COMPANY's tests and information dissemination, the results of which METROPOLITAN LIFE INSURANCE COMPANY published in leading medical journals.

99.     As a direct and proximate contributing result of METROPOLITAN LIFE INSURANCE COMPANY's failures to conduct or accurately publish adequate tests or disseminate accurate and truthful information, after undertaking to do so; (i) the risk of harm to Plaintiff Charles Franklin Connor from asbestos exposure was increased, and (ii) Charles Franklin Connor suffered the injuries previously described.

100.    In failing to test fully and adequately for the adverse health effects from exposure to asbestos; in delaying the publication of such results; in falsely editing such results as were obtained; in suppressing relevant medical inquiry and knowledge about those hazards to promote the sale and distribution of asbestos as a harmless product; and in collaborating with the other Defendants materially to understate the hazards of asbestos exposure, all for their own profit and gain, METROPOLITAN LIFE INSURANCE COMPANY acted willfully, wantonly, and with malice in calculated disregard for the welfare of the general public, including Plaintiff Charles

Franklin Connor. Plaintiff seeks compensatory and punitive damages against METROPOLITAN LIFE INSURANCE COMPANY as a result.

## DAMAGES

101.   Plaintiff incorporates by reference the preceding paragraphs as if fully set forth herein.

102.   As a result of the development of asbestos related diseases, Plaintiff has suffered and sustained very serious injuries to his person, to wit: mesothelioma.

103.   Plaintiff has further suffered great pain, extreme nervousness, and mental anguish as a direct result of the aforesaid injuries.

104.   Plaintiff verily believes that his injuries and illnesses are recurrent in nature and that he will be forced to suffer same for the remainder of his life; that his enjoyment of life has been greatly impaired; that he has been forced to remove himself from his job due to his poor health resulting in substantial lost wages and loss of earning capacity; and further, that his expected life span has been greatly shortened.

105.   Plaintiff alleges that as a result of the aforesaid illnesses, he has been forced to incur large amounts of medical expenses by way of doctor and drug bills and verily believes that he will be forced to incur additional expenses in an effort to treat his illnesses as aforesaid alleged.

WHEREFORE, the Plaintiff verily believes he is entitled to actual damages against the Defendants, jointly and severally, by reason of said negligence, gross negligence, breach of warranty, failure to warn and other breaches of duty as alleged herein proximately caused by the fault of the Defendants, lost wages, special damages, and punitive damages in an amount to be determined by the trier of fact, plus the costs of this action.

## JURY DEMAND

Plaintiff respectfully requests a trial by jury of all claims so triable.

## PRAYER FOR RELIEF

WHEREFORE, the Plaintiff prays that this Court:

A.  Award the Plaintiff compensatory damages, in an amount to be determined at trial;

B.  Award the Plaintiff punitive damages;

C.  Award the Plaintiff pre-judgment and post-judgment interest and any other costs, expenses or fees to which the Plaintiff may be entitled by law; and

D.  Award the Plaintiff such other and further relief as is just and proper.

**A JURY IS RESPECTFULLY DEMANDED TO TRY THESE ISSUES.**

.

Respectfully submitted,

WALLACE AND GRAHAM, P.A.

/s/William M. Graham
William M. Graham, Esq.
NC Bar No. 17972
Attorneys for Plaintiff
WALLACE & GRAHAM, P.A.
525 North Main Street
Salisbury, NC 28144
Tel. No. (704) 633-5244
Fax: (704) 633-9434
E-Mail: bgraham@wallacegraham.com

## DEFENDANT SERVICE LIST

**NORFOLK SOUTHERN RAILWAY COMPANY**
Corporation Service Company
327 Hillsborough Street,
Raleigh, North Carolina 27603

**AIR & LIQUID SYSTEMS CORPORATION**, individually and as successor-in- interest to
BUFFALO PUMPS
CT Corporation System
116 Pine Street, Ste 320
Harrisburg, PA, 17101

**BW/IP, INC.**, individually and as successor to BYRON JACKSON PUMPS
c/o The Corporation Trust Company
Corporation Trust Center
1209 Orange St,
Wilmington, DE 19801

**CARRIER CORPORATION**
CT Corporation System
160 Mine Lake Ct. St.
Raleigh, NC 27615

**CBS CORPORATION**, f/k/a Viacom, Inc., sued as successor-by-merger to CBS Corporation
f/k/a Westinghouse Electric Corporation
Corporation Service Company
2711 Centerville Rd., Ste. 400
Wilmington, DE 19808

**COVIL CORPORATION**
c/o Jim Covil
815 East Butler Road Apt 113
Greenville SC 29607

**CRANE CO.**
The Corporation Trust Company
Corporation Trust Center
1209 Orange St.
Wilmington, DE 19801

**DANA COMPANIES LLC,** successor-by- merger to WARNER BRAKE AND CLUTCH
COMPANY
CT Corporation System
4701 Cox Rd., Ste. 285
Glen Allen, VA 23060

**DANIEL INTERNATIONAL CORPORATION** f/k/a DANIEL CONSTRUCTION
COMPANY, INC.
John Reynolds
100 Four Daniel Drive
Greenville, SC 29607

**FISHER CONTROLS INTERNATIONAL, LLC**, wholly owned subsidiary of EMERSON
ELECTRIC COMPANY
C T Corporation System
120 South Central Ave.
Clayton, MO 63105

**FLOWSERVE US INC.**, individually and as successor To BYRON JACKSON PUMP
COMPANY
CT Corporation System
160 Mine Lake Ct., Ste. 200
Raleigh, NC 27615

**FLUOR CONSTRUCTORS INTERNATIONAL**, f/k/a FLUOR CORPORATION
Corporation Service Company
1703 Laurel St
Columbia, SC 29201

**FLUOR CONSTRUCTORS INTERNATIONAL, INC.**
 Corporation Service Company
1703 Laurel St
Columbia, SC 29201

**FLUOR DANIEL SERVICES CORPORATION**
Corporation Service Company
327 Hillsborough Street
Raleigh, NC 27603

**FLUOR ENTERPRISES, INC.**
Corporation Service Company
327 Hillsborough Street
Raleigh, NC 27603

**GENERAL ELECTRIC COMPANY**
CT Corporation System
150 Fayetteville St., Box 1011
Raleigh, NC 27601-2957

**GOULDS PUMPS, INC.**
CT Corporation System
160 Mine Lake Ct., Ste. 200
Raleigh, NC 27615

**METROPOLITAN LIFE INSURANCE COMPANY**
CT Corporation System
111 Eighth Avenue
New York, NY, 10011

**MINE SAFETY APPLIANCES COMPANY, LLC**
CT Corporation System
160 Mine Lake Ct., Ste. 200
Raleigh, NC 27615

**PNEUMO ABEX, LLC**, successor in interest to ABEX CORPORATION
Corporation Service Company
2711 Centerville Rd., Ste. 400
Wilmington, DE 19808

**SPX COOLING TECHNOLOGIES, INC.**, individually and successor in interest to MARLEY
COOLING TOWERS CO.
CT Corporation System
160 Mine Lake Ct., Ste. 200
Raleigh, NC 27615

**THE DOW CHEMICAL COMPANY**
CT Corporation System
160 Mine Lake Ct., Ste. 200
Raleigh, NC 27615

**WARNER ELECTRIC LLC**
Illinois Corporation Service C
801 Adlai Stevenson Drive
Springfield, IL 62703

 Respectfully submitted,

/s/William M. Graham
William M. Graham (NC Bar #17972)
Wallace & Graham, P.A.
525 North Main Street
Salisbury, NC 28144
Phone: 704-633-5244
bgraham@wallacegraham.com